UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MELISSA C. WEBB,

      Plaintiff,

v.

WARDEN STEPHEN ROSSITER,
JAMAUL AKEEM JACKSON, JARED
M. COLUMBINE, and MITZI K.
SHIVER, individually,

      Defendants.

Case No. **5:24-cv-159**

**JURY TRIAL DEMANDED**

## COMPLAINT FOR DAMAGES
## AND DEMAND FOR JURY TRIAL

Plaintiff Melissa C. Webb sues Defendants Warden Stephen Rossiter,

Jamual Akeem Jackson, Jared M. Columbine, and Mitzi K. Shiver, each

individually, and alleges as follows:

## JURISDICTION, VENUE AND PARTIES

1.     This is an action for damages under 42 U.S.C. § 1983. This Court has

jurisdiction under 28 U.S.C. §§ 1331 and 1343.

2.     Plaintiff, Melissa C. Webb, brings this action against the Defendants

pursuant to 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of

law of the Plaintiff's rights, privileges, and immunities secured by the

Constitution of the United States. Plaintiff seeks money damages to redress the

deprivation of her constitutional and civil rights. Plaintiff also seeks an award of

attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable

federal or state laws.

3.      Venue is proper in Marion County, Florida because the causes of

action alleged herein accrued in this county.

### Parties

4.      At all times material to this lawsuit, Plaintiff, Melissa C. Webb was

an inmate at the Lowell Correctional Institution (Lowell) Annex, located in

Ocala, Florida. At all times material, Ms. Webb was in the custody, care, and

control of the Florida Department of Corrections (FDC).

5.      At all times material hereto, Jamaul Akeem Jackson was a

correctional sergeant working as a housing officer for the Florida Department of

Corrections (FDC) at Lowell Correctional Institution (Lowell) Annex in Ocala

Florida. He is sued individually.

6.      At all times material hereto, Defendant Stephen Rossiter was

Warden of Lowell, including Lowell Annex, charged with the operation of the

facility and the protection of the prisoners it held during the events complained

of by Plaintiff herein. He is sued individually.

7.      At all times material hereto, Defendant Jared M. Columbine was a correctional officer who worked in Dorm M at Lowell where Plaintiff was housed. He is sued individually.

8.      At all times material hereto, Defendant Mitzi K. Shiver was classification officer for Plaintiff at Lowell. She is sued individually.

9.      At all times material, each of the Defendants was acting under color of state law.

10.     Webb exhausted her administrative remedies prior to bringing this lawsuit.

## COMMON ALLEGATIONS OF FACT

### A. Jackson Sexually Assaults Webb at Lowell and Others Assist Him

11.     In 2020, Plaintiff Melissa C. Webb was an inmate of Lowell Correctional Institution Annex (Lowell Annex) in Ocala, Florida.

12.     In a continuing pattern of conduct, on numerous occasions including April into May 2020, Defendant Jamaul Jackson, an FDC correctional sergeant working as a Housing Sergeant in Dorm M, arranged to have private access to Inmate Melissa Webb through his machinations and those of other persons for the purpose of engaging in sexual activity with her.

13.     On some occasions, Defendant Jackson took Webb to work areas

that were off limits to other inmates. On others, he was given access to her cell at night and afforded privacy to sexually assault Webb. As a prisoner, Webb had no power to consent to sexual activity.

14.     This pattern was endemic at Lowell and was sustained through the deliberate indifference of the Warden and other prison officials, who had notice of the conduct and acted or failed to act deliberately to enable it.

15.     During the time that Jackson was having sexual contact with Webb, Corrections Officer Jared Michael Columbine would deliberately open doors at Jackson's request giving Jackson access to Webb's cell at night, where he would stay for substantial periods of time.

16.     During the time that Jackson was having sexual contact with Webb, Webb told Classification Officer Mitzi K. Shiver about the sexual misconduct, but Shiver did nothing to follow up on that information.

17.     During the time that Jackson was having sexual contact with Webb, Warden Stephen Rossiter was aware of the pattern of sexual misconduct at his institution, as had been investigated by the U.S. Department of Justice, but he failed to take measures to seek out and punish and remove officers who sexually exploited Lowell inmates, including Webb.

18.     Webb was aware that at any time, Jackson or the persons who

assisted him could negatively impact her incarceration status and sought a way to document the sexual assault in case Jackson, Columbine, Shiver, and others retaliated against her. On one occasion, Webb was able to collect Jackson's sperm onto a sock and kept it as DNA evidence of the sexual misconduct.

19.     On or about July 6, 2020, Webb met with Senior Inspector Michael Green and told him that she had been fondled and had other forms of sexual contact with Defendant Jackson and had been asked to perform fellatio on him to which she complied.

20.     Based on Webb's statement, Defendant Jackson was subsequently placed on "No Inmate Contact" and moved from Lowell to nearby Marion Correctional Institution.

21.     The sock with DNA was retrieved from Webb's possession. The sock was tested and showed the presence of male DNA.

22.     On July 8, 2020, Inspector Green met with Defendant Jackson and confronted him with the allegations, which Jackson denied. Defendant Jackson agreed to submit to a buccal swab for the purpose of collecting DNA evidence.

23.     Subsequent to the submission of the DNA evidence, Jackson admitted to having sexual contact with Webb and that they had oral sex and that he ejaculated.

24.     Green placed Jackson under arrest for violation of 944.35(3)(b)(1)

Florida Statutes, a third-degree felony. DNA tests confirmed that the sock Webb

provided contained Defendant Jackson's DNA.

25.     Subsequently, Webb faced extreme hostility from other Lowell staff

and families of staff such that she had to seek prison placement outside Florida.

### B. The DOJ Investigation into Sexual Misconduct at Lowell

26.     In 2018 through 2019, an investigation by the U.S. Department of

Justice revealed a pattern of sexual misconduct involving both rape and sexual

advances by prison employees and Lowell and Lowell Annex, ascribing

knowledge and acquiescence by Lowell Warden Stephen Rossiter.

27.     The Department of Justice report stated that "Lowell sergeants,

corrections officers and other staff have committed notorious acts of sexual

abuse, including rape, against prisoners."

28.     The report stated, "prisoners have suffered harm from sexual abuse

and are at substantial risk of serious harm because existing systems discourage

prisoners from reporting sexual abuse and fail to effectively detect and deter

sexual abuse."

29.     Initially, then-Secretary of the Department of Corrections, Mark

Inch, stated that Rossiter was "working tirelessly to provide a safe and secure

facility for inmates and staff" at Lowell. Inch disagreed with the conclusions of the federal report and pointed out that Lowell had met and exceeded prison standards based on an audit.

30.     After the DOJ report and calls for Rossiter's firing, Rossiter was promoted from Warden to Assistant Regional Director of Programs.

**C.  History of Sexual Misconduct at Lowell**

31.     Lowell C.I. has a long history of sexual misconduct condoned for years at the top levels. In 2015, Lowell Assistant Warden Martin Martinez was fired for behaving inappropriately with female inmates. Some inmates called him "Daddy." According to reports, each day prisoners would line up at the back date waiting to talk to "Daddy" and seek favors.

32.     Corrections officers told investigators that Martinez favored younger, more attractive female inmates and would do favors like special bunk assignments, chocolates or time for them to liaison with their sexual partners.

33.     A charge of "Conduct Unbecoming" against Martinez for this conduct was sustained and he was fired on January 15, 2015. His dismissal capped a six-month investigation that included interviews with dozens of inmates, officers, commanders, and other staff.

34.     One of those interviewed was Sgt. Patrick Quercioli who had been

placed on administrative leave after Latandra Ellington who found dead just 10 days after writing her family that she had been threatened with death by "Sgt. Q." Counsel for Ellington's family of said that the laxity of the Lowell administration made prison staff feel they could get away with anything.

35.     In its 34-page report of the investigation, which began in 2018, the Department of Justice also noted that state Department of Corrections officials have documented and been aware of sexual abuse at Lowell since at least 2006.

36.     In calling for the resignation of Warden Stephen Rossiter, State Senator Janet Cruz wrote that while the DOJ investigation focused on the period from 2017 to 2019, "it notes multiple incidents that have occurred well into 2020. The pattern of abuse at this facility is documented dating back to 2005, and it is unfathomable that it continues to go unaddressed."

37.     Rossiter knew about DOJ's allegations prior to Defendant Jackson's sexual assault of Webb, but he failed to implement any mechanisms to prevent continued sexual abuse, including the abuse that Webb encountered after the DOJ's scathing report was released.

## CAUSES OF ACTION

### I.     Unlawful Force under 42 U.S.C. § 1983 (against Jackson)

Plaintiff realleges paragraphs 1 through 37 as if set forth fully herein.

38.     This claim is brought pursuant to the provisions of 42 U.S.C. § 1983 against Jamaul Jackson in his individual capacity.

39.     At all times while she was in the exclusive custody and care of the Florida Department of Corrections, Webb had the constitutional right to be free from cruel and unusual punishment and the right to personal security and bodily integrity including the right to be free from sexual assaults.

40.     Defendant Jamaul Jackson, acting under color of state law deprived and violated Webb's federally secured constitutional rights including her right to be secure in her person and her right to be free from cruel and unusual punishment during her confinement in Lowell C.I.

41.     Defendant Jamaul Jackson, with deliberate indifference to Melissa Webb's constitutional rights, sexually assaulted her from April into May 2020, by requiring her to engage in sexual acts with him when she was an inmate at the Lowell Annex.

42.     Defendant Jamaul Jackson misused and abused the official power granted to him by the State of Florida in the performance of his official duties by assaulting Webb, thereby causing harm to her.

43.     As a direct and proximate result of Defendant Jamaul Jackson's sexual assault of Webb in violation of 42 U.S.C. § 1983, Webb was deprived of

rights, privileges and immunities afforded to her by the U.S. Constitution and the Bill of Rights including her right to be secure in her person and her right to be free from cruel and unusual punishment.

44.     Webb has retained legal counsel to represent her in this matter to whom she must pay a reasonable attorney fee.

WHEREFORE, Plaintiff Melissa C. Webb seeks relief as set forth in her Prayer for Relief.

## II.     Failure to Protect under 42 U.S.C. § 1983 (against Rossiter)

Plaintiff Melissa C. Webb realleges paragraphs 1 through 37 as if set forth fully herein.

45.     As Warden of Lowell Correctional Institution and Annex, Defendant Stephen Rossiter had knowledge of and complicity in the ubiquity of sexual misconduct at Lowell.

46.     At all times while she was in the exclusive custody and care of the Florida Department of Corrections, Webb had the constitutional right to be free from cruel and unusual punishment and the right to personal security and bodily integrity including the right to be free from sexual assaults.

47.     Warden Rossiter had prior knowledge of the risk of harm to female inmates but failed to take reasonable steps, including without limiting, housing

and escort policies and procedures to prevent such harm to Webb.

48.     With deliberate indifference to Webb's personal safety and knowledge of his staff's continued sexual abuse of inmates, Warden Rossiter failed to protect Webb from substantial risk of serious harm, including sexual assault in violation of her rights under the Eighth and Fourteenth Amendments to the United States and under 42 U.S.C. §1983. In doing so, Warden Rossiter violated clearly established law which a reasonable person in his position would have known violated that clearly established law.

49.     The sexual assault against Webb was the result of Warden Rossiter's custom, practice, rule and/or policy of deliberate indifference to the substantial risk of harm which he knew was posed to female inmates such as Webb, and his deliberate indifference to female inmates, including Webb, in failing to investigate staff allegations of sexual abuse or misconduct about which he knew involving sexual misconduct with female inmates at Lowell.

50.     As a direct and proximate result of Defendant Warden Rossiter's deliberate indifference to the substantial risk of harm to female inmates such as Webb in failing to investigate other allegations/incidents of sexual abuse or misconduct in violation of 42 U.S.C. § 1983, the Plaintiff was deprived of rights, privileges and immunities afforded to her by the U.S. Constitution and the Bill of

Rights including her right to be secure in her person and her right to be free from cruel and unusual punishment.

51.     As a direct and proximate result of Warden Rossiter's above-described deliberate indifference, which was committed under color of state law and in violation of Webb's rights to be secure in her person and be free from cruel and unusual punishment, Melissa Webb was sexually exploited and has suffered emotional, mental and psychological injury.

52.     Plaintiff has retained legal counsel to represent her in this matter to whom she must pay a reasonable attorney fee.

WHEREFORE, Plaintiff Melissa C. Webb seeks relief as set forth in her Prayer for Relief.

### III.     Failure to Protect under 42 U.S.C. § 1983 (against Columbine and Shiver)

Plaintiff Melissa C. Webb realleges paragraphs 1 through 37 as if set forth fully herein.

53.     Plaintiff is entitled to relief against Corrections Officers Jared Columbine and Mitzi K. Shiver for their failures to protect Webb pursuant to the Eighth and Fourteenth Amendments.

54.     At all times while she was in the exclusive custody and care of the Florida Department of Corrections, Webb had the constitutional right to be free

from cruel and unusual punishment and the right to personal security and bodily integrity including the right to be free from sexual assaults.

55.     With deliberate indifference to Ms. Webb's personal safety, Defendants Columbine and Shiver failed to protect her from a known substantial risk of serious harm, including sexual assault in violation of her rights under the Eighth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. § 1983. In doing so, Columbine and Shiver violated clearly established law which a reasonable person in their position would have known they violated that clearly established law.

56.     The sexual assault against Melissa Webb was the result of Columbine's deliberate indifference to the substantial risk of harm which he knew was posed to female inmates such as Melissa Webb, and his deliberate indifference to female inmates, including Melissa Webb, in failing to investigate staff allegations of sexual abuse or misconduct about which he knew involving sexual misconduct with female inmates at Lowell.

57.     As a direct and proximate result of Defendants Columbine's and Shiver's deliberate indifference to the substantial risk of harm to Webb, Webb was deprived of rights, privileges and immunities afforded to her by the U.S. Constitution including her right to be secure in her person and her right to be

free from cruel and unusual punishment.

58.     As a direct and proximate result of Columbine's and Shiver's above-described deliberate indifference, which was committed under color of state law and in violation of Webb's rights to be secure in her person and be free from cruel and unusual punishment, Webb was sexually exploited and has suffered emotional, mental and psychological injury.

59.     Plaintiff has retained legal counsel to represent her in this matter to whom she must pay a reasonable attorney fee.

WHEREFORE, Plaintiff Melissa C. Webb seeks relief as set forth in her Prayer for Relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Melissa C. Webb demands the following relief:

A.  Compensatory damages in an amount to be determined, including damages for physical injury and mental pain and suffering;

B.  Punitive damages against the individual defendants for their malicious and unconscionable actions depriving Plaintiff of her constitutional rights;

C.  Reasonable attorney's fees and costs under 42 U.S.C. § 1988;

D.  Trial by jury on all counts so triable; and

E.  Any further relief this Court deems just and proper.

Respectfully submitted on 4/1/24,    <u>s/ James V. Cook</u>
James V. Cook, Esq.
Florida Bar Number 0966843
LAW OFFICE OF JAMES COOK
314 West Jefferson Street
Tallahassee, Florida 32301
(850) 222-8080; 561-0836 fax
cookjv@gmail.com

<u>/s/ James M. Slater</u>
James M. Slater, Esq.
Florida Bar Number 111779
SLATER LEGAL PLLC
113 S. Monroe Street
Tallahassee, Florida 32301
Tel: (305) 523-9023
james@slater.legal

Attorneys for Plaintiff